UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TITO BARRON-AGUILAR,

                                        Petitioner,

        v.

KYLE OLSEN[1], *et al.*,

                                        Respondents.

Case No. 3:17-cv-00548-MMD-CLB

ORDER

I.    **SUMMARY**

Petitioner Tito Barron-Aguilar filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 38 ("Petition")). This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. Also before the Court is Petitioner's Motion for Discovery (ECF No. 81). For the reasons discussed below, the Court denies the Petition, denies Petitioner a certificate of appealability, and denies his motion for discovery.

II.   **BACKGROUND**

        **A.  Conviction and Appeal**

Petitioner challenges a 2014 conviction and sentence imposed by the Second Judicial District Court for Washoe County. Following a jury trial, Petitioner was found guilty of four counts of unlawful sale of a controlled substance, three counts of trafficking in a controlled substance, and one count of conspiracy to violate the Uniform Controlled

---

[1]The Nevada Department of Corrections ("NDOC") inmate locator page indicates that Petitioner (identification number 1129542) is incarcerated at the Southern Desert Correctional Center. *See* NDOC, *Inmate Search* (last visited March 2023), https://ofdsearch.doc.nv.gov/form.php. The NDOC website reflects that Gabriela Najera is the current warden of that facility. *See* NDOC, *Southern Desert Correctional Center* (last visited March 2023), https://doc.nv.gov/Facilities/SDCC_Facility/. At the end of this order, the Court directs the Clerk of Court to substitute Petitioner's current immediate physical custodian, Gabriela Najera, as Respondent for the prior Respondent Kyle Olsen under Federal Rule of Civil Procedure 25(d).

Substances Act. (ECF No. 21-3.) The state court entered a judgment of conviction on October 15, 2014, and sentenced Petitioner to 25 years with parole eligibility after a minimum of 10 years for one trafficking count with an aggregate of 24-84 months on two other counts, running consecutive to the trafficking count, and 74-300 months on the remaining five counts, running concurrently to the trafficking count. (ECF No. 23-11.) Petitioner appealed and the Nevada Supreme Court affirmed. (ECF No. 27-5.)

### B. Facts Underlying Conviction

Charles Kurash worked as an informant for the Reno Police Department's Street Enforcement Team ("SET") to clear his wife's criminal record. (ECF Nos. 27-15 at 3, 24-1 at 130-31.) He testified that at the time of his wife's arrest in October 2013, he was using methamphetamine. (ECF No. 24-1 at 130.) Kurash's wife's felony charges were either dismissed or reduced to a paraphernalia charge. (*Id*. at 156.) Kurash testified at trial that he had used methamphetamine, had purchased drugs from Petitioner, and had worked with Detective Rasmussen to perform controlled buys. (*Id*. at 131-32.) On October 17, 2013, Kurash called Petitioner and arranged a meeting to purchase methamphetamine. (*Id*. at 133-34.) While wearing a wire that SET installed to record audio during the meeting, Kurash met with Petitioner and purchased two grams of methamphetamine. (*Id*. at 137.)

Kurash introduced to Petitioner an undercover officer using the name Pablo over the telephone. (*Id*. at 139.) Kurash arranged another meeting with Petitioner under the guise that Kurash was purchasing drugs for Pablo. (*Id*. at 145.) Kurash testified that another individual had arrived at the designated meeting location, and Kurash had purchased half an ounce of methamphetamine from that individual. (*Id*. at 147-488.)

Kurash testified that Petitioner had "fronted" him methamphetamine, wherein Petitioner gave methamphetamine to Kurash, and Kurash would pay Petitioner later. (*Id*. at 151.) Kurash met with Petitioner on December 4, 2013, at Petitioner's house. (*Id*. at 152.) Kurash requested to purchase half an ounce of methamphetamine for Pablo. (*Id* at 154.) Petitioner left his house and returned, met with Kurash, who was waiting outside of Petitioner's house, and Petitioner gave Kurash the drugs. (*Id*. at 161-63.) Kurash testified

that in total he had purchased three grams of methamphetamine directly from Petitioner. (*Id*. at 178.)

Detective Rasmussen testified at trial that he had coordinated the operation of the narcotics investigation of Petitioner. (*Id*. at 187-89.) He confirmed that the investigation began after Kurash's wife was charged with drug possession, and that Kurash wanted to "work off some of her charges." (*Id*. at 190-91.) Detective Rasmussen testified as to the procedures for controlled buy operations. (*Id*. at 194.) He testified that confidential informants call their drug supplier with officers present, and that before meeting with the supplier, officers strip search the confidential informant and perform a search of their vehicle. (*Id*.)

During a search of Kurash's vehicle prior to a controlled buy, detectives located methamphetamine that Petitioner fronted Kurash. (ECF No. 25-1 at 33.) On recross examination, Detective Rasmussen testified that he had not recorded in his reports the detectives' location of narcotics during a search of Kurash's vehicle. (*Id*. at 44.) Detective Rasmussen terminated the controlled buy operation to investigate two residences associated with Petitioner. (ECF No. 24-1 at 233-34.)

Detective Chalmers testified at trial that he had overseen the execution of a search warrant on a residence located at 5429 Sun Valley Boulevard that was associated with Petitioner because the energy bill for the residence was in Petitioner's name. (ECF No. 25-1 at 234, 237.) During the execution of the search warrant, detectives retrieved a digital scale and a plastic container of approximately one pound of methamphetamine inside of a tall stereo speaker. (*Id*. at 244-49.)

Detective Marconato testified regarding the SET investigation of Petitioner and his involvement with the execution of the search warrant and evidence. (*Id*. at 48.) He testified that officers had collected 23.9 grams of methamphetamine from the 5700 Yukon residence, where Petitioner resided. (ECF Nos. 25-1 at 72, 26-1 at 89.) He further testified that officers had collected 294.4 grams of methamphetamine packaged in 432 plastic bags from the 5429 Sun Valley residence. (ECF No. 25-1 at 76.) He testified that officers

had also recovered a spiral note pad that contained numbers, and testified that he believed the note pad was a pay/owe sheet. (*Id*. at 58.) In addition, three flip phones and one iPhone were recovered. (*Id*. at 83.)

Detective Leyva testified that he had assumed the role of an undercover officer to make a purchase of narcotics during the operation. (*Id*. at 102.) Using the name Pablo, Detective Leyva contacted Petitioner over the telephone to purchase drugs after Kurash "put in a good word for [Pablo.]" (*Id*. at 108-09, 112.) Detective Leyva called Petitioner on October 30, 2013, to confirm that they were meeting, and Detective Leyva requested to purchase an eighth of an ounce of methamphetamine. (*Id*. at 112-14.) Detective Leyva exchanged text messages with Petitioner. (*Id.* at 123-27.) Detective Leyva met with an individual who gave him methamphetamine in exchange for $200. (*Id*. at 127-29.) Detective Leyva also testified that he had observed the transaction that occurred between Petitioner and Kurash on October 17, 2013, and that he had heard the audio through the wire recording. (*Id*. at 103-05.)

With the assistance of an interpreter, Petitioner testified at trial that he had worked as a general contractor and had sold items that he repaired, such as household appliances. (ECF No. 26-1 at 80.) He sold appliances to an individual, Freddie Soria, and later learned that Soria sold narcotics. (*Id*. at 83.) Soria gave Petitioner a phone number. (*Id*.) Petitioner testified that he was good friends with Kurash. (*Id*. at 84.) When Kurash asked Petitioner if he knew anyone that sold good quality drugs, Petitioner gave Kurash Soria's telephone number. (*Id*. at 85.)

Petitioner testified that he had never sold drugs. (*Id*. at 87.) He testified that he had called the phone number to get drugs for Kurash because Kurash did not have money. (*Id*. at 93-94.) Kurash gave Petitioner items like tools in exchange for money. (*Id*.) Petitioner testified that he had obtained methamphetamine for Kurash and Pablo. (*Id*. at 95-96.) Petitioner sent a text message to Pablo stating, "Can you call other number so they know, please. I already did, but I want my people to get to know you too, thanks." (*Id*. at 98.) In regard to the text message, Petitioner testified that they did not want him to

4

sell to other people, they only wanted him to help his friend check. (*Id*. at 99.) The interpreter then stated that Petitioner had corrected him to say, "no, not sell. Just obtain the drug." (*Id*.)

Petitioner testified that he had installed the water and electricity at the 5429 Sun Valley residence (*Id*. at 92.) He had agreed to have his name on the energy bill for his friend Soria. (*Id*. at 138.)

### C.  State Post-Conviction Proceedings and Federal Habeas Action

Petitioner sought post-conviction relief in a *pro se* state petition for writ of habeas corpus (ECF No. 27-8), which the state court denied. (ECF No. 27-15.) The Nevada Supreme Court affirmed the denial of relief. (ECF No. 27-24.) On September 8, 2017, Petitioner initiated this federal habeas proceeding *pro se*. (ECF No. 1.) The Court appointed counsel on initial review and granted leave to amend the petition. (ECF No. 4.) He filed a counseled first amended petition (ECF No. 11) alleging five grounds for relief.

Petitioner acknowledged that Grounds C, D, and E of his first amended petition were unexhausted. (*Id*. at 15, 18, 21.) Respondents moved to dismiss certain claims as unexhausted. (ECF No. 19.) Petitioner responded by requesting a stay and abeyance to exhaust his state remedies. (ECF No. 28.) The Court stayed this action pending exhaustion of his claims in Nevada courts and denied Respondents' dismissal motion without prejudice. (ECF No. 32.)

In June 2018, Petitioner filed a second state petition for writ of habeas corpus (ECF No. 35-12), asserting claims identical to Grounds B, C, D, and E of the first amended petition. The second state habeas petition was denied as untimely and successive. (ECF No. 35-19.) The Nevada Supreme Court affirmed the denial of relief. (ECF No. 35-30.) In July 2020, this Court granted Petitioner's unopposed request to reopen this case and set a schedule to complete briefing. (ECF Nos. 34, 36, 37.) Petitioner then filed this Petition. (ECF No. 38.) Respondents moved to dismiss Grounds C, D, and E as either procedurally defaulted and/or barred. The Court denied Respondents' motion to dismiss and deferred consideration of whether Petitioner can demonstrate cause and prejudice under *Martinez*

*v. Ryan*, 566 U.S. 1 (2012), to overcome procedural default of Grounds D and E until merits review. (ECF No. 57.)

## III.    LEGAL STANDARD

### A.  Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

6

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

### B. Standard for Evaluation of Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness"; and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d

987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.") (internal quotation marks omitted). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

IV.   **DISCUSSION**

  **A. Ground A**

  **i.   Additional Background Information**

In Ground A, Petitioner alleges that the state trial court violated his due process rights and right to a fair trial when it denied his motion for a mistrial based on Detective Rasmussen's failure to disclose that drugs were found in Kurash's vehicle during a search before a controlled buy. (ECF No. 38 at 12-15.) He asserts that the state failed to disclose material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). At trial, Detective Rasmussen testified that after discovering the drugs in Kurash's vehicle, Kurash informed detectives that Petitioner fronted Kurash about seven grams of narcotics. (ECF No. 25-1 at 17.) Detective Rasmussen retrieved about four or five grams and provided Kurash with money to pay Petitioner for the fronted drugs. (*Id*. at 18, 33.) Detective Rasmussen further testified that, based on his experience, if a drug supplier offers to front drugs to an informant, the informant cannot refuse and still continue the operation thereafter. (*Id*. at 34.)

After defense counsel represented to the state court that his investigator was unable to substantively communicate with Kurash after Kurash was released as a witness, defense counsel renewed his motion for a mistrial. (ECF No. 26-1 at 149-50.) The state argued as follows:

> Your Honor, in reviewing my notes last night, I looked at Detective Rasmussen's testimony. He testified that Mr. Kurash had come forward during the investigation and said he had been fronted a certain quantity of methamphetamine by [Petitioner.] The indication from Detective

Rasmussen, and this is well documented through the testimony yesterday and also to some extent in the report, though not in great detail, that they had a discussion on what to do with that logistically with respect to the investigation. It is indicated in Detective Rasmussen's police report which was provided to defense during discovery that [Petitioner] had fronted Mr. Kurash some methamphetamine, and as a result there was an outstanding debt, and they weren't sure how to deal with that from the investigative end. So certainly there was an indication in the report that Mr. Kurash had obtained methamphetamine beyond the scope of the supervision of the officers, and that it was worth what it was worth, and certainly was available to the defense at the time.

Detective Rasmussen and I believe one other witness, I don't recall who exactly, fleshed out a few more details, but that was the crux of their testimony which was provided to defense in discovery.

Mr. Kurash testified and was subject to cross-examination at the preliminary hearing. He was fully identified at that time. Certainly defense could have pursued it appropriately in the intervening months. Certainly the officers were available for questioning informally as well. The fact that it was not done certainly does not warrant a mistrial at this point.

Additionally, the value of that information, and I'm not conceding that it's *Brady* material, but if we wanted to pursue that logic, would be to establish that Mr. Kurash is a drug addict and probably not a stellar citizen. I think that was clearly established by his own testimony certainly, Your Honor, and certainly by the testimony of [Petitioner] here as well today.

(*Id.* at 151-52.) The state court agreed with the state's argument and denied the motion for mistrial. (*Id.* at 152.)

Petitioner alleges that because Detective Rasmussen recovered only some of the fronted drugs found during the vehicle search, Kurash either used or sold the remainder of the drugs. (*Id.* at 14.) He alleges that had defense counsel "known about the recovered drugs at the time of Kurash's testimony, [counsel] could have impeached Kurash on this point." (*Id.* at 15.) In addition, he argues that "a question also arises as to whom Kurash actually got the drugs from." (*Id.*) Petitioner argues that the Nevada Supreme Court's ruling is not entitled to deference because the state appellate court made an unreasonable determination of fact that the evidence was neither withheld nor material. (ECF No. 80 at 14-15.)

### ii. Applicable Legal Principles

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The *Brady* rule encompasses evidence "known only to police investigators and not the prosecutor." *Kyles v. Whitley,* 514 U.S. 419, 438 (1995). The duty to produce such material arises even if the defense request is non-specific or if there is no request at all. However, *Brady* does not establish a "duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *United States v. Agurs,* 427 U.S. 97, 106-07 (1975).

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

### iii. Exhaustion

Respondents argue that Petitioner failed to fully exhaust Ground A because he did not argue to the Nevada Supreme Court that the suppressed information was material to impeach Kurash. (ECF No. 69 at 20.) They assert that Petitioner argued on direct appeal that the information was necessary to show that someone other than Petitioner was the source of the drugs. (*Id*. at 21.) Petitioner, however, argued in the lower court that the information was necessary to impeach Kurash. (*Id*.) As such, the state appellate court commented that Petitioner "change[d] his theory underlying an assignment of error on

1  appeal," and the state appellate court did not address Petitioner's impeachment

2  argument. (*Id.*) Respondents argue that Petitioner did not fairly present his constitutional

3  claim in Ground A to the state appellate court. (*Id.*)

4      A state prisoner first must exhaust state court remedies on a habeas claim before

5  presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion

6  requirement ensures that the state courts, as a matter of comity, will have the first

7  opportunity to address and correct alleged violations of federal constitutional guarantees.

8  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). "A petitioner has exhausted his

9  federal claims when he has fully and fairly presented them to the state courts." *Woods v.*

10  *Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838,

11  844-45 (1999). To satisfy the exhaustion requirement, a claim must have been raised

12  through one complete round of either direct appeal or collateral proceedings to the highest

13  state court level of review available. *O'Sullivan*, 526 U.S. at 844-45; *Peterson v. Lampert*,

14  319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

15      A properly exhausted claim "'must include reference to a specific federal

16  constitutional guarantee, as well as a statement of the facts that entitle the petitioner to

17  relief.'" *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63

18  (1996)); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation

19  requires both the operative facts and federal legal theory upon which a claim is based).

20  A claim is not exhausted unless the petitioner has presented to the state court the same

21  operative facts and legal theory upon which his federal habeas claim is based. *Bland v.*

22  *California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994).

23      Here, the Petition raises materiality arguments regarding Petitioner's *Brady* claim

24  for impeachment purposes and whether Petitioner was the source of drugs. Petitioner

25  argued in his brief on direct appeal to the Nevada Supreme Court that omitted information

26  is "probative of the issue of what was the <u>source</u> of the methamphetamine transferred

27  after Kurash's dealings to Detective Rasmussen." (ECF No. 21-28 at 24.) Petitioner also

28  presented arguments as to impeachment. (*Id.* at 24-26.) The Court finds that Petitioner's

1   arguments related to his *Brady* claim were presented to the Nevada Supreme Court on

2   direct appeal. The Court thus denies Respondents' request to dismiss Ground A as

3   unexhausted.

4                              **iv. State Court Determination**

5        On direct appeal, the Nevada Supreme Court held:

6        [A]ppellant contends that the district court abused its discretion by denying
         his request for a mistrial on the grounds that the State failed to disclose that
7        drugs were found on the informant during an administrative search. On
         appeal, appellant contends that this evidence should have been disclosed
8        pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), because it raised the
         possibility that someone other than appellant was the source of the drugs.
9        But below, appellant only argued that the evidence was *Brady* material
         because it was useful for impeaching informant regarding his drug
10       addiction, which had been established. An appellant cannot change his
         theory underlining an assignment error on appeal. *Ford v. Warden*, 111
11       Nev. 872, 884, 901 P.2d 123, 130 (1995). Moreover, as appellant himself
         points out, the theory he advances on appeal is inconsistent with his
12       testimony at trial, and given that testimony, he cannot complain that the
         evidence was withheld, *see United States v. Diaz*, 922 F.2d 998, 1007 (2d
13       Cir. 1990) (concluding that *Brady* was not violated where evidence at issue
         was within defendant's knowledge), or that it was material, *see Mazzan v.*
14       *Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000).

15  (ECF No. 27-5 at 2-3.)

16                                    **v. Conclusion**

17       The Nevada Supreme Court's decision is neither contrary to, nor an unreasonable

18  application of, federal law as determined by the United States Supreme Court, and is not

19  based on unreasonable determinations of fact in the state court record. At trial, Petitioner

20  testified that he had obtained drugs for Kurash and had provided drugs to Kurash on

21  October 17 and December 4, 2013. (ECF No. 26-1 at 139.) Kurash gave Petitioner money

22  for the drugs. (*Id*. at 123.) He further admitted that he had arranged a drug deal for Kurash

23  on November 7. (*Id*. at 140.) Because Petitioner admitted that he had provided drugs to

24  Kurash, had received money from Kurash for the drugs, and had arranged a drug deal

25  for Kurash, his testimony is inconsistent with the theory that Kurash obtained drugs from

26  an unknown source. Accordingly, the undisclosed evidence is not material because there

27  is not a reasonable probability that, had the evidence been disclosed to the defense, the

28  result of the proceeding would have been different. *See Strickler*, 527 U.S. at 281-82.

In the alternative, the Court also denies relief as to Ground A on *de novo* review. Petitioner must demonstrate that the improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Materiality "must be evaluated in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976). The mere possibility an item of undisclosed information might have helped the defense or affected the outcome of the trial does not establish materiality. *See id.*

Ground A fails because Petitioner cannot demonstrate a reasonable probability that, had the evidence that Petitioner fronted drugs to Kurash been disclosed to the defense for either impeachment purposes or to question the source of the drugs, the result of the proceeding would have been different. Although Petitioner testified that he had never sold drugs, he also testified that he had obtained drugs for Kurash, had provided him the drugs, and had received money from Kurash. (*Id.* at 123-39.) He also admitted that he arranged a drug deal for Kurash with Soria. (*Id*. at 140.) Detectives provided surveillance of the transactions between Petitioner and Kurash. (ECF No. 79-2 at 40.) Kurash wore a wire to record audio during his transactions with Petitioner. (ECF No. 24-1 at 135, 145.) In addition, during the execution of a search warrant, officers recovered an energy bill at a residence in Petitioner's name, a digital scale, and approximately one pound of methamphetamine. (ECF No. 25-1 at 234, 237.)

The evidence at issue is not material because it would not negate the evidence that Petitioner engaged in the underlying drug transactions for his convictions. Moreover, although Petitioner may have been able to further impeach Kurash if he had obtained the alleged *Brady* evidence, the outcome of the trial would not have been different. Kurash testified that he had used methamphetamine and had worked as an informant to clear his wife's criminal record. (ECF No. 24-1 at 130, 156.) Detective Rasmussen, Petitioner, and Kurash's own testimony all indicate that Kurash was addicted to methamphetamine. Defense impeached Kurash on the basis that he was cooperating with police to help clear his wife's criminal record. In light of the evidence against Petitioner, the Court does not

conclude that the evidence that Detective Rasmussen recovered drugs from Kurash during a vehicle search before a controlled buy "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Accordingly, the Court denies habeas relief with respect to Ground A.

### B. Ground B

#### i. Additional Background Information

In Ground B, Petitioner alleges that trial counsel rendered ineffective assistance for failure to object to an incomplete procuring agent defense jury instruction. (ECF No. 38 at 15-20.) At trial, Petitioner testified that he had been acting as a middleman for Kurash and Pablo and the drug seller, Soria. (*Id*. at 16.) He argues that officers did not find drugs or money on him, and that he made no money from the transactions with Kurash. (*Id*.) Petitioner presented a theory of defense that he was merely a procuring agent for Kurash. (*Id*. at 17.)

The procuring agent instruction stated as follows:

> If you believe that another person asked Defendant Barron-Aguilar to get methamphetamine for him, and that the Defendant Barron-Aguilar thereupon undertook to act on the other person's behalf, rather than on Defendant Barron-Aguilar's own behalf, and in so doing, purchased the methamphetamine from a third person with whom the Defendant Barron-Aguilar was not associated in selling methamphetamine, and that Defendant Barron-Aguilar thereafter delivered the methamphetamine to the other person, Defendant Barron-Aguilar is not a seller and cannot be convicted of the offense of Sale of a Controlled Substance.

> The State has the burden of proving beyond a reasonable doubt that Defendant Barron-Aguilar was not a procuring agent.

(ECF No. 12-2 at 31.) Petitioner argues that the instruction failed to define "associated in selling methamphetamine" and lowered the state's burden of proof because the state argued at closing that the procuring agent defense did not apply because Petitioner was associated with a drug supplier, Soria. (ECF No. 38 at 18.) He asserts that he was not "criminally associated" because he did not benefit from the transaction. (*Id*.)

///

///

### ii.  State Court Determination

In affirming the denial of Petitioner's state habeas petition, the Nevada Supreme Court held:

> [Petitioner] next argues that trial counsel should have requested a more "complete" jury instruction on his theory that he was merely acting as a procuring agent for the informant. [Petitioner] has failed to identify how the procuring-agent instruction given was incomplete and, accordingly, has failed to show that counsel's performance was deficient or that he was prejudiced by the instruction given. The district court therefore did not err in denying this claim without conducting an evidentiary hearing.

(ECF No. 12-10 at 3.)

### iii.  Conclusion

The Nevada Supreme Court's conclusion that the state district court did not err in finding a lack of deficiency or prejudice was neither contrary to nor an unreasonable application of *Strickland*. Petitioner fails to demonstrate that trial counsel was deficient, or that there was a reasonable probability of a different outcome if counsel had objected to the jury instruction. The jury instruction refers to an association specifically in the sale of methamphetamine. At closing, the state argued that Petitioner was not entitled to the procuring agent defense because he associated with Soria, was a drug dealer, and "by [Petitioner's] own testimony, has been in that world for three years." (ECF No. 26-1 at 183-84.) Moreover, Petitioner admitted that he had arranged drug deals for Kurash. (*Id.* at 140.) He testified that he had contacted Soria on behalf of Kurash and Pablo to obtain methamphetamine. (*Id.*) Although Petitioner testified that he had not made any money from the drug transactions, Petitioner nonetheless admitted he had received money from Kurash. (*Id.* at 95.) Petitioner has not demonstrated that an objection had any likelihood of success. Accordingly, the Court denies habeas relief with respect to Ground B.

### C.  Ground C

### i.  Additional Background Information

In Ground C, Petitioner alleges that his right to a fair trial and due process rights were violated because the state failed to correct or disclose the benefit Kurash received as a result of his cooperation with the state. (ECF No. 38 at 20-23.) Kurash testified that

1   he did not expect and did not receive any benefit for his cooperation, but that he was

2   working as a confidential informant on behalf of his wife. (*Id*. at 20.) Petitioner alleges that

3   Kurash was arrested on November 17, 2013, for robbery, was released, and another

4   robbery took place on December 5, 2013. (*Id*.) Kurash confessed to the robberies in May

5   2014. (*Id*. at 21.) Kurash pled guilty to both robbery charges and was sentenced to 26-

6   120 months and a concurrent term of 16-72 months. (*Id*.) Petitioner alleges that the state

7   court suspended Kurash's sentence because of the "good work" Kurash did as an

8   informant. (*Id*.)

9       Petitioner alleges that the state failed to disclose Kurash's criminal history, and that

10  his trial counsel "was not aware that Kurash had open robbery cases at the time of

11  [Petitioner]'s trial." (*Id*.) He asserts that the state failed to disclose impeachment evidence

12  in the form of Kurash's criminal history in violation of *Brady*. (*Id*. at 23.) He further asserts

13  that he was deprived of his due process rights. (*Id*.)

14          **ii.  State Court Determination**

15      The Nevada Supreme Court held that Petitioner's 2018 state habeas petition was

16  untimely and successive. (ECF No. 35-30.) The Nevada Supreme Court, however,

17  reviewed whether Petitioner could demonstrate good cause and actual prejudice to

18  overcome the procedural bar, and affirmed the denial of the state habeas petition:

19      [Petitioner] has not demonstrated that the State violated *Brady*, and
        consequently he has not shown good cause or prejudice. Information about
20      the confidential informant's arrest for robbery and the statement relating to
        the confidential informant's "lengthy criminal history" was available to trial
21      counsel—it was contained in a document filed in the district court before
        trial. Thus, this information was not withheld. [FN5] [Petitioner] has further
22      not demonstrated that there was any agreement between the State and the
        confidential informant regarding the informant's charges or any promised
23      benefit for his participation in [Petitioner]'s case. [FN6] Finally, [Petitioner]
        has failed to demonstrate that the evidence was material given the
24      substantial evidence presented at trial. *See Bennett*, 119 Nev. At 600, 81
        P.3d at 8 (explaining that the materiality prong of a *Batson* violation requires
25      a demonstration of a reasonable probability (or reasonable possibility if the
        evidence was specifically requested) of a different result had the evidence
26      been disclosed). . . . Thus, we conclude that the district court did not err in
        determining this claim was procedurally barred and without good cause and
27      prejudice.

28          [FN5] As to allegedly withheld information about post-trial events
            involving the confidential informant (i.e., the confidential informant's

16

1
2
3
4
5
6
7
8
9
10
11
12

sentencing hearing), *Brady* is the wrong framework. *See Dist. Attorney's Office for the Third Judicial Dist.* V. *Osborne*, 557 U.S. 52, 68-69 (2009) (concluding that *"Brady* is the wrong framework" to address any disclosure obligation in the postconviction setting because the liberty interest is not the same after a conviction and the State therefore has "more flexibility in deciding what procedures are needed in the context of postconviction relief"). As [Petitioner] has not identified the correct framework governing disclosure obligations with respect to post-trial evidence, we conclude that he has not demonstrated error.

[FN6] [Petitioner] only speculates that the confidential informant's O.R. release (or lack of confinement after arrest) was due to some agreement with the State but offers nothing to substantiate that speculation. Further, the transcript of the informant's sentencing hearing supports the State's assertion that there was no agreement for any benefit regarding the informant's robbery charges. In fact, the State vigorously argued against the confidential informant being able to argue for such during sentencing. Additionally, the district court's sentencing decision does not support an argument that the State agreed to the benefit. Therefore, [Petitioner] has not supported his related claim that the State did not correct misinformation about the benefits the confidential informant was to receive as a result of his participation in [Petitioner]'s case.

13   (ECF No. 35-30 at 4-6.)

14   ### iii. Conclusion

15   The Nevada Supreme Court's decision is neither contrary to nor an unreasonable

16   application of federal law as determined by the United States Supreme Court, and is not

17   based on unreasonable determinations of fact in the state court record.

18   The record does not support the contention that there was an agreement between

19   Kurash and the state that Kurash would receive a benefit at sentencing after pleading

20   guilty to his robbery charges for cooperating as a confidential informant. Although

21   Kurash's counsel argued at sentencing that the court should consider that Kurash was a

22   confidential informant related to "a very large quantity of methamphetamine arrest," the

23   prosecution clarified that Kurash had already received a benefit for his assistance as an

24   informant. (ECF No. 35-9 at 17, 21.) The prosecution noted that detectives had not been

25   present at sentencing to testify that Kurash rendered assistance, and that Detective

26   Rasmussen represented that "they are unwilling to work with somebody who when signed

27   up as a confidential informant then goes and commits robberies and commits additional

28

burglaries." (*Id*. at 21.) The prosecution argued that due to the nature of Kurash's charges, it was "inappropriate for somebody to work off." (*Id*.)

Kurash's counsel, however, also highlighted that Kurash was fully employed, that he had paid and caught up on child support, that he had complied with court services while released from custody, and that he had participated in a drug treatment program and counseling. (*Id*. at 15.) The state court noted that Kurash had tested positive once for methamphetamine, but had completed thirteen clean random tests, had been compliant with weekly check-ins, and had provided proof of counseling. (*Id*. at 32.) The state court provided that Kurash's "actions in the last months of doing what [he] has done have spoken very loudly," and clarified that his work as a confidential informant did not "legally rise to a substantial assistance, but the reality is you did do some good work for this community as a CI." (*Id*. at 34.)

Moreover, Petitioner fails to demonstrate that Kurash's criminal history was material in a way that undermines confidence in the verdict. Petitioner can only speculate that disclosure of the alleged withheld evidence would have made a different result reasonably probable, and Petitioner fails to establish materiality based on such speculation. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting a habeas corpus petition "on the basis of little more than speculation" is improper); *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005) ("'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'") (citation omitted).

As by the Nevada Supreme Court reasonably noted, given the substantial evidence presented at trial, Petitioner failed to demonstrate materiality. At trial, Detective Rasmussen and Detective Leyva corroborated Kurash's testimony, and the state presented audio recording of the controlled buys. Petitioner also admitted that he had obtained methamphetamine for Kurash, had received money from Kurash, and had arranged drug deals for Kurash. *See Smith v. Cain*, 545 U.S. 73, 76 (2012) ("[O]bserv[ing]

that evidence impeaching an eyewitness may not be material if the state's other evidence is strong enough to sustain confidence in the verdict.") In addition, the defense elicited testimony from and impeached Kurash about his past drug use and the benefit he had received on behalf of his wife from cooperating against Petitioner. (ECF No. 24-1 at 167.) The Court therefore denies habeas relief with respect to Ground C.

### D.  Cause and Prejudice under *Martinez*

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. In *Martinez*, the United States Supreme Court held that the absence or inadequate assistance of counsel in an initial review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. 566 U.S. at 9. The Nevada Supreme Court does not recognize *Martinez* cause as cause to overcome a state procedural bar under Nevada state law. *Brown v. McDaniel*, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez*–and only *Martinez*–as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred, but that he nonetheless has a potentially viable cause and prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if 'the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding.'" *Martinez*, 566 U.S. at 17.

To establish cause and prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent deficient performance, the result of the post-conviction proceeding would have been different; and (3) the underlying ineffective assistance of trial counsel claim is a substantial one. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). Determining whether there was a reasonable probability that the result of the post-conviction

1  proceedings would be different "is necessarily connected to the strength of the argument

2  that trial counsel's assistance was ineffective." *Id.*

3  　　　　To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate

4  that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That

5  is, the petitioner must be able to make at least some showing that trial counsel performed

6  deficiently, and that the deficient performance harmed the defense. *See Strickland*, 466

7  U.S. at 695-96. In *Martinez*, the Supreme Court cited the standard for issuing a certificate

8  of appealability as an analogous standard for determining whether a claim is substantial.

9  *Martinez*, 566 U.S. at 14-16. According to the certificate of appealability standard, a claim

10  is substantial if a petitioner shows "reasonable jurists could debate whether . . . the [issue]

11  should have been resolved in a different manner or that the issues presented were

12  adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

13  322, 336 (2003) (quotation and citation omitted). Here, Petitioner advances only *Martinez*

14  as a basis for excusing default for Grounds D and E.

15  　　　　　**i.  Ground D**

16  　　　　　　**a.  Additional Background Information**

17  　　　　In Ground D, Petitioner alleges trial counsel rendered ineffective assistance of

18  counsel for failure to object to jury instructions that allowed Petitioner to receive a higher

19  mandatory sentence on the basis that the jury did not find all requisite elements beyond

20  a reasonable doubt. (ECF No. 38 at 24-27.) The Nevada trafficking statute sets forth

21  mandatory minimum and maximum terms of imprisonment based on the quantity of

22  narcotics.[2] (*Id.* at 5.) Petitioner asserts that trial counsel was deficient for failing to object

23  to jury instructions under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny,

24  which provide that "[o]ther than the fact of a prior conviction, any fact that increases the

25  penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury

26  and proved beyond a reasonable doubt." 530 U.S. at 490.

27

28

　　　　　　[2]*See* NRS § 453.3385.

Petitioner asserts that the quantity of narcotics possessed or sold by a defendant is an element that must be found by the jury beyond a reasonable doubt and trial counsel failed to object to jury instructions that were insufficient because the instructions did not inform the jury that the levels of trafficking needed to be established beyond a reasonable doubt. (*Id*. at 27.) He argues that the jury instructions did not include the designated levels as elements of the offense. (*Id*.)

The following jury instructions were presented to the jury:

**Instruction 11:** The burden rests upon the prosecution to establish every element of the crime with which the defendant is charged, and every element of the crime must be established beyond a reasonable doubt.

**Instruction 18**: The crime of TRAFFICKING IN A CONTROLLED SUBSTANCE consists of the following elements:

(1) A person willfully, unlawfully, knowingly, and/or intentionally
(2) Sells, manufactures, deliver [sic] or be in actual or constructive possession of any controlled substance, or any mixture which contains any such controlled substance
(3) In a quantity of four grams or more

The crime of TRAFFICKING IN A CONTROLLED SUBSTANCE is further delineated into specific levels:

If the quantity of controlled substance or mixture containing a controlled substance is 4 grams or more but less than 14 grams it is designated as a Level 1;

If the quantity of controlled substance or mixture containing a controlled substance is 14 grams or more but less than 28 grams it is designated as a Level 2;

If the quantity of the controlled substance or mixture containing a controlled substance is 28 grams or more it is designated as a Level 3.

**Instruction 19**: For a person to be convicted of Trafficking in a Controlled Substance under NRS 453.3385, it is not necessary there be additional evidence of any activity beyond the knowing possession of a designated quantity of controlled substance or mixture containing a controlled substance.

Methamphetamine is a Schedule I controlled substance.

(ECF No. 12-2.)

///

///

### b. *Martinez* does not apply to Ground D.

The Court finds that Ground D is not substantial within the meaning of *Martinez*. 566 U.S. at 14. Petitioner fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial because he fails to demonstrate that his counsel was deficient or that prejudice resulted under *Strickland*. Counsel's "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985); *see also Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000).

The jury in this case found Petitioner guilty of three counts of trafficking in a controlled substance.[3] Jury Instruction 18 designates the quantity of a controlled substance as an element of the crime of trafficking in a controlled substance and provides the delineation of the levels by quantity. (*Id.* at 22.) Jury Instruction 11 provides that the prosecution must establish every element of the crime, and that every element of the crime must be established beyond a reasonable doubt. (*Id*. at 15.) Jury Instruction 19 further clarifies that evidence of knowing possession of a designated quantity of a controlled substance must be presented for a person to be convicted of trafficking in a controlled substance. (*Id*. at 23.)

Jury instructions must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Looking at the jury instructions as a whole, fair-minded jurists could reasonably conclude that the jury was adequately instructed as to what elements of each crime had to be proven beyond a reasonable doubt, and there is not a reasonable likelihood that the jury was confused by the delineation of levels by quantity of controlled substance. Petitioner has not shown that the jury instructions violate *Apprendi*, and the Court thus does not find ineffective assistance of counsel by failure to raise a meritless objection. Petitioner does not

---

[3]Count 4 sets forth the quantity as 4 grams or more but less than 14 grams of a controlled substance. Count 6 sets forth the quantity as 14 grams or more but less than 28 grams of a controlled substance. Count 7 sets forth the quantity as 28 grams or more of a controlled substance. (ECF No. 22-3.)

demonstrate cause and prejudice relative to the procedural default. The Court denies Ground D.

### ii.  Ground E

#### a.  Additional Background Information

In Ground E, Petitioner alleges that trial counsel rendered ineffective assistance for failures to investigate the confidential informant, request *Brady* materials related to the confidential informant, and adequately cross-examine the confidential informant at trial. (ECF No. 38 at 28-33.) In an affidavit attached to the state's request for a material witness warrant, the state noted that Kurash was "currently charged with two robberies pending in Reno Justice Court and a charge of Destruction of Property pending in Sparks Justice Court." (ECF No. 12-1.) The state also noted that Kurash had "a lengthy criminal history including prior failures-to-appear, and a long-term substance abuse problem." (*Id.*) Petitioner asserts that such materials were filed with the state court and Petitioner's trial counsel should have received a copy. Trial counsel, however, provides in an affidavit that he did not receive Kurash's criminal history from the state during pre-trial discovery, and that he was not aware that Kurash had open robbery cases. (ECF No. 35-23.)

Petitioner argues that trial counsel was deficient because he did not investigate the confidential informant and did not follow up on the state's representations regarding Kurash's robberies and criminal history. (ECF No. 38 at 29.) Petitioner further argues that trial counsel should have requested Kurash's confidential informant police file and police reports, notes, and communications regarding Kurash. (*Id.* at 31.) He asserts that because trial counsel did not conduct an adequate investigation or request *Brady* material on Kurash, trial counsel did not adequately cross-examine Kurash at trial. (*Id.* at 32.) Specifically, Petitioner argues, trial counsel could have impeached Kurash on his crimen falsi convictions and prior felony convictions within the past ten years. (*Id.*)

#### b.  *Martinez* does not apply to Ground E.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466

U.S. at 691. Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2000), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). In general, claims of failure to investigate must show what information would be obtained with investigation, and whether, assuming the evidence is admissible, it would have produced a different result. *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir. 1994); *Wade v. Calderon*, 29 F.3d 1312, 1316-17 (9th Cir. 1994), *overruled on other grounds by Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 815 (9th Cir. 2003).

Petitioner fails to demonstrate that Ground E is a substantial claim within the meaning of *Martinez* because Petitioner fails to demonstrate a reasonable probability of a different result. When considered in light of all the evidence, including the testimony of Detectives Rasmussen and Leyva as well as Petitioner's testimony, trial counsel's failure to investigate Kurash on his alleged criminal history or pending charges did not prejudice Petitioner. The jury heard Petitioner's testimony and defense that he was acting only as a procuring agent. Petitioner testified that Pablo had pressured him into obtaining drugs and that he was obtaining drugs for Kurash and Pablo as a favor. (ECF No. 26-1 at 96,133.)

In addition to Kurash's testimony, the jury also heard Detective Rasmussen and Detective Leyva's testimony regarding their surveillance of the drug buys, and the jury also heard audio recording of a controlled buy between Kurash and Petitioner. The defense elicited testimony from and impeached Kurash about his past drug use and the benefit he received on behalf of his wife from cooperating against Petitioner. (ECF No. 24-1 at 167.) Although the evidence at issue regarding Kurash's criminal history and pending charges would further impeach Kurash, the evidence does not significantly buttress Petitioner's procuring agent defense, and it does not impeach or otherwise affect the credibility of Detectives Rasmussen and Leyva. Moreover, Petitioner admitted to

obtaining drugs for Kurash and arranging drug deals. (ECF No. 26-1 at 133.) Petitioner cannot show a reasonable probability that the result of the proceeding would have been different. Accordingly, Ground E is denied.

## V.   MOTION FOR DISCOVERY

In support of Grounds C, D, and E, Petitioner requests an evidentiary hearing and that the Court permit discovery of the following materials:

- Complete criminal history, including arrests not resulting in convictions, of Charles Kurash, in this or any other jurisdiction.

- Complete confidential informant ("CI") file for CI # 2013-0166, Charles Kurash.

- Copy of the "guidelines" provided to individuals working as confidential informants.

- All police reports, memos, notes, and correspondence pertaining to Kurash's work as CI.

- Names and case numbers of any and all other cases in which Charles Kurash was used as a CI.

- Information concerning Kurash's custodial status starting from the investigation into Tito Barron-Aguilar and concluding with the conviction of Tito Barron-Aguilar, including but not limited to his arrest and release on November 17, 2013 (robbery 1) and May 13, 2014 (robbery 2), and including the names of all law enforcement officers having contact with Kurash during that time.

- Information concerning any agreement (express or implied) between Kurash and any local, state, or federal agency made in connection with this case or any other investigation or case, including his two robbery cases.

- Information concerning any promise made to, or threat made against, Kurash by any local, state, or federal agency made in connection with this case or any other investigation or case.

- Information concerning any benefits discussed, offered, given, requested, accepted or made by or between Charles Kurash and any local, state, or federal agency for information or efforts provided in connection with this case or any other investigation or case.

- Information concerning release, detention, bail, deferred prosecution, non-prosecution, plea agreements, or sentence reductions received by Kurash, or discussed in regard to Kurash whether or not they were actually offered or received, in connection with his work as a CI and/or testimony in this case.

(ECF No. 81 at 10-11.) Petitioner asserts there is good cause for his request because

discovery is necessary to fully develop the facts of his claims. (*Id.* at 6-7.) He further asserts that evidence presented at an evidentiary hearing would support his substantive claims and would establish cause and prejudice to overcome procedural default as to Grounds D and E. (*Id.* at 4.) Petitioner's discovery requests and request for an evidentiary hearing were denied upon his return to state court when filing his second state habeas petition. (*Id.* at 8.)

A habeas petitioner "is not entitled to discovery as a matter of ordinary course[,]" but only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" *Bracy v. Gramley*, 520 U.S. 899, 904, 908-09 (1997). The Ninth Circuit has admonished courts to not permit a "fishing expedition" in habeas discovery. *Earp v. Davis*, 881 F.3d 1135, 1144 (9th Cir. 2018) (affirming district court's denial of further discovery where petitioner's allegations were "too attenuated and too speculative" to make a plausible showing); *Calderon v. U.S. Dist. Ct. for N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation."). "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause" for habeas discovery. *Strickler*, 527 U.S. at 286.

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Section 2254(e)(2) prohibits the use of new evidence in federal habeas matters without satisfying strict requirements. Respondents argue that Petitioner fails to satisfy 28 U.S.C. § 2254(e)(2)'s standards for further factual development in federal court. (ECF No. 85 at 1-2.) Respondents rely on *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), wherein the Supreme Court held that under 28 U.S.C. § 2254(e)(2), "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on an ineffective assistance of state postconviction counsel." 142 S. Ct. at 1734. Section 2254(e)(2) applies when the petitioner "has failed to develop the factual

1   basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Such failure "is not

2   established unless there is a lack of diligence, or some greater fault, attributable to the

3   prisoner or the prisoner's counsel." *Ramirez*, 142 S. Ct. at 1735.

4          Post-*Ramirez*, the Court will require a petitioner to make a § 2254(e)(2) showing

5   before permitting discovery for the purpose of overcoming procedural default. However,

6   "[e]ven if all of these requirements are satisfied, a federal habeas court still is not *required*

7   to hold a hearing or take any evidence. Like the decision to grant habeas relief itself, the

8   decision to permit new evidence must be informed by principles of comity and finality that

9   govern every federal habeas case." *Ramirez*, 142 S. Ct. at 1731.

10         Petitioner relies on an unpublished Ninth Circuit decision in *Hanson v. Baker*, 766

11  F. App'x 501 (9th Cir. 2019), upholding the finding that an attempt to develop the factual

12  basis of claims during a second, procedurally defaulted state post-conviction petition was

13  sufficient to overcome the requirements of § 2254(e)(2). (ECF No. 86 at 7.) Even if the

14  Court found that Petitioner was not at fault for not being able to develop the factual basis

15  for his claims, the Court nonetheless denies Petitioner's request for discovery to establish

16  cause and prejudice based on the Court's analysis of Grounds D and E and the principles

17  of comity and finality. *See Ramirez*, 142 S. Ct. at 1731 (citing *Brown v. Davenport*, 142

18  S.Ct. 1510, 1523-24 (2022)).

19         Having reviewed Grounds C, D, and E, the Court does not find that Petitioner has

20  established good cause, or that the discovery Petitioner seeks will assist him in

21  demonstrating that he is entitled to relief. In regard to Grounds C and E, because the

22  Court finds no *Brady* violation and no prejudice for trial counsel's alleged ineffective

23  assistance, Petitioner cannot justify discovery for these claims. The Court recognizes the

24  potential for impeachment evidence, but it has already determined that Petitioner

25  nonetheless cannot establish plausible materiality under *Brady* or a reasonable

26  probability of a different outcome at trial demonstrating entitlement to relief. As discussed

27  above, Petitioner fails to demonstrate substantial claims of ineffective assistance of trial

28  counsel necessary to overcome the procedural defaults because the resolution of the

1   merits of the claims are not debatable among jurists of reason, and the issues are not

2   deserving enough to encourage further pursuit of them.

3        The Court determines that no evidentiary hearing is warranted. *See Schriro v.*

4   *Landrigan*, 550 U.S. 465, 474-75 (2007) (recognizing the principle that district courts need

5   not hold evidentiary hearing when the record precludes habeas relief). Accordingly,

6   Petitioner's motion for discovery is denied.

7   **VI.   CERTIFICATE OF APPEALABILITY**

8        This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section

9   2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").

10  Therefore, the Court has *sua sponte* evaluated the claims within the Petition for suitability

11  for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851,

12  864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the

13  petitioner "has made a substantial showing of the denial of a constitutional right." With

14  respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable

15  jurists would find the district court's assessment of the constitutional claims debatable or

16  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S.

17  880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists

18  could debate (1) whether the petition states a valid claim of the denial of a constitutional

19  right and (2) whether this Court's procedural ruling was correct. *Id.*

20       Applying these standards, this Court finds that a certificate of appealability is

21  unwarranted.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **VII.    CONCLUSION**

2           It is therefore ordered that Petitioner's second amended petition for writ of habeas

3    corpus under 28 U.S.C. § 2254 (ECF No. 38) is denied.

4           It is further ordered that a certificate of appealability is denied.

5           It is further ordered that Petitioner's motion for discovery (ECF No. 81) is denied.

6           It is further ordered that the Clerk of Court is directed to substitute Gabriela Najera

7    for Respondent Kyle Olsen, enter judgment accordingly, and close this case.

8           DATED THIS 3rd Day of April 2023.

9

10

11                                                    _____

12                                                    MIRANDA M. DU
                                                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28